21-27-83, and Mr. Dunham, you're going to bat first. Thank you, Your Honor. May it please the Court. My name is Daryl Dunham, and I'm representing Ryan Laney, who's a Chapter 13 debtor. This case is largely about the Doctrine of Grace Judicata. The facts are somewhat complicated, but I think for Grace Judicata purposes, what's most important in this case is that Laney filed a petition in bankruptcy, in Southern District of Illinois in fall of 2013. After a couple of attempts, he got a plan confirmed on March 20th, 2020. There's no dispute between the parties that Second Chance had filed an affidavit asking for attorney's fees to be assessed prior to the confirmation order. I don't think there's any dispute that that affidavit for attorney's fees, the motion, the pleading asked for relief under Section 105 of the Bankruptcy Code, which is a section that permits bankruptcy court to award attorney's fees as a sanction. The bankruptcy judge, after the confirmation order, basically indicated to Second Chance that there was going to be no attorney's fees awarded as a sanction and directed Second Chance, Mr. Martin, to file an amended proof of claim to include additional attorney's fees. Second Chance was a little bit slow in doing that, indicating to the court that they were wanting the attorney's fees to be awarded as a sanction, and only after the court further instructed Second Chance to file an amended proof of claim, they did so. We, of course, objected, saying that essentially what Second Chance was trying to have happen was to have the additional attorney's fees paid under the Chapter 13 plan. And we think the law is very clear. And I think that's the doctrine of ratio of cause extremely important, because in Chapter 13, essentially what we're required to do, representing the debtors, is we look at all the claims, we look at our budget, and we propose a plan, and we propose our plan based on those claims that have been approved by the court, and that we haven't objected to, and that's exactly what we did. Mr. Durham, can I ask you, I'm sorry to interrupt you, but can I ask you a question here? Were the attorney's fees, was the court and the parties aware of the attorney's fees issue before the court confirmed, I don't know if it was the second or third, it seemed to me that your client continually resisted the court's requirement to file an amended plan. And it also seemed to me that under the terms of the purchase of sale for the car, your client agreed to pay the attorney's fees. So it seems to me that before the court confirmed, I don't know if it was the amended plan or the second amended plan, I can't remember, it seemed to me that everybody knew that attorney's fees was an issue here, and it was an ongoing issue, and the court approved an estimated plan, maybe the court should have waited, but it doesn't seem like, I'm just not sure what this case is about, to tell you the truth. You mentioned res judicata, but it seems like everybody knew this was coming. Your Honor, I don't think that's an accurate reflection of what is happening in the case here. Second Chance made it very clear in their pleading that they wanted to have the attorney's fees awarded as a sanction. I don't think there's anything in this record that would indicate that we did not timely file our plans, and our plans, certainly the final plan that we got confirmed, paid every claim in full, particularly Second Chance's claim as to the Clyro and the Ford Edge. There was never any dispute about that. It is true that we were aware, I was aware, that Second Chance was wanting attorney's fees to be paid as a sanction under Section 105. I was aware of that, but what the case seems to be about is that Second Chance is saying that we should have anticipated that the bankruptcy judge was going to deny their motion for attorney's fees as a sanction, should have anticipated that they were going to be given leave to file an amended proof of claim to add the additional attorney's fees, and then make our calculations based on something that was completely and wholly speculative. At the time our plan was confirmed, the Section 105 motion for sanctions hadn't even been ruled on, and there was no reason to believe at that point that the bankruptcy judge was even going to grant the motion for attorney's fees as a sanction. The reason this is extremely important, Your Honor, is when we make these calculations, it becomes fine-tuned. If we have claims that are, say, an additional $5,000 or $6,000 of attorney's fees, or whatever the claims might be, that additional claims onto the plan might be the result of the plan failing. We may not be able to get a plan confirmed because of the additional monies that are added onto the claims. We have to be able to look at the claims in proposing our plan. Sorry. Go ahead, Your Honor. I'm sorry. No, I'm sorry. But OK, thank you. Could we, you know, analogize the situation here to what happens in civil cases with attorney's fees after a court enters a final order of judgment, a party may petition for fees? And it can be difficult for the party requesting the fees to have a final tally by the time of the submissions for final judgment. So would that be true in bankruptcy, too, that there are times when a full calculation of attorney's fees isn't possible by the date that the plan is confirmed? Is that… Your Honor, it's a completely… Two things. Let me take the first issue first. I was awarded attorney's fees once in civil litigation. And what happened was a verdict came in. And then what the court did was calculate the fees and then added them into the final judgment. But it has to be in this case, and I cite a plethora of cases in my brief, where as part of the claims process, the secured creditor has to file a claim with the attorney's fees included. And that's what happens. And then you make your calculation in terms of how much the creditors are going to get in terms of the disposable income based on what those claims are. What happened in this case was we had pre-confirmation fees. Then they amend their plan. They amend their claim and want us to up the payments in our plan. There is no case out there anywhere other than this case that where a court has approved this procedure. Well, what about matter of Wittkowski? Does that contemplate some adjustment to claims? What happened in that case, Your Honor, was unlike this case, the Chapter 13 trustee filed a motion for modification of the plan. There was no such motion like that filed in this case. And what happened was some of the creditors had not filed proof of claims. And so the Chapter 13 trustee modified the plan and upped the amount of payments to the secured, unsecured creditors who had filed proofs of claim. And so they had gone through the modification procedure. The court determined, this court determined that the modification was warranted, but it did not cause any prejudice to the debtor because the debtor paid exactly the same amount as the original Chapter 13 plan did. In this case, if we're going to be required somehow to get our discharge, we're going to have to wind up upping our payments by a substantial amount. And that's why res judicata must apply. I understand that you're saying you didn't anticipate that the debtor might have to pay more money here on the other side of this plan confirmation. What do you make of the fact that the agreement between the parties includes the idea of attorney's fees when it talks about full repayment and second chances filing of the motion for sanctions? Did not either one of those give you a reason, give Laney a reason to anticipate, hey, we might have to set aside some money for attorney's fees here? We have to look at the claims, Your Honor. I cite several cases in my brief where the creditor, for one reason or another, didn't file a proof of claim fully that they were entitled to. I cite cases where the creditor, for whatever reason, forgot to add the attorney's fees into their claim and they were entitled to. And so a plan gets confirmed and the courts say it's res judicata. That's what res judicata is about. You're bound by whatever could have been litigated or was actually litigated. In this case, second chances never offered any reason why it didn't initially. Well, it did offer a reason why it didn't initially amend its proof of claim to include those attorney's fees. And the reason it offered, and it told the bankruptcy judge, was we don't want to do it through the claims process. We want the fees to be awarded as a sanction. Told the court that after the plan was confirmed. And the court ordered second chance file an amended claim. After we, several months afterward, that's what res judicata is about. They did not, as in the Wisconski case, they did not file a motion to modify the plan and then show how their motion to modify the plan met the statutory requirements. But how do you want us to reconcile those cases that you've cited with what we also know from Holstein? Which is there is an exception to the general rule that the confirmed plans bind everyone. And that exception is compelling circumstances. Why doesn't the district court have the discretion there to find these circumstances are compelling? Your Honor, I really appreciate that question. I've only got two minutes, and I asked for five minutes. Yeah, just don't worry. Go ahead. You have to always answer. Thank you, Your Honor. That's an excellent question. Because Holstein and Chappell, Chappell in this court basically says if you want to get relief from a confirmed plan under section 1327A, you look to rule 60 of the rules of civil procedure. It is a relief from judgment procedure. And then Holstein, which is a chapter 11 case, says unusual or special circumstances. In the Holstein case, Your Honor, this court asked the parties involved, were they ever aware of a situation where after a confirmed plan, the debtor was required to up his or its payments and pay more money? And since the Bankruptcy Act of 1898 up to 1993, there had been no such case. From 1993 on to today, this is the only case that I can find where a court has ordered a debtor under a confirmed plan to actually up the payments to the creditors. It's not a special case. It's not an unusual case. You cannot use rule 60 to correct mistakes. You cannot use rule 60 to correct errors of judgment. And I think the Holstein special circumstances rule and the rule 60 relief from judgment rule, it's a very high standard, Your Honor. And it hasn't been met in this case. And I see it's three seconds left. No, no, no. You're going to get your cut. Okay. And I welcome your questions. I really appreciate the questions. But the only thing that's been offered in this case as to why there are special circumstances is, well, the debtor was aware of the fact that there was this claim for attorney's fees. That's the only thing that's ever been offered. And that can't be special circumstances. What the court needs to understand is this. Under section 105, if the court had awarded sanctions for in this case, I would have had to pay those attorney's fees because that's the way I interpret the cases because it was my error. The bankruptcy judge said, no, this is not sanctions here. And now it's my client that's going to have to pay these attorney's fees. And this plan might very well fail. Let me ask you very quickly, this picture you've painted, that this would be the only case where a debtor was required to pay more. So you mean to tell us that with this general rule that estimates are just estimates, things can change after a plan is confirmed. There have been no other cases where that estimate turned into a higher amount for the debtor. There's two points that need to be made here, Your Honor, that I think are very important. Number one is it is true that this particular court had a form that they require everybody to use that talks about the word estimate. But as I cited in my brief, the forms created by the courts can't trump the statute. And the statute in this case is 1327A and it's binding. So you can't use the word estimate to somehow avoid section 1327A. But it is true, Your Honor, you're absolutely correct. There are going to be cases that are going to occur where you're going to have to modify the plan. And that will be situations where the debtor has lost his job or maybe the debtor has won the lottery or the debtor has had additional bills, medical bills or something like that, where you have to go in and you have to amend your plan, modify your plan, section 1329 and change the payments. Happens all the time. But this is the only case, the district courts and the bankruptcy courts holding in this case is the only case that I could find reported case where a judge has ordered a debtor to up the payments for a claim that pre-existed the plan, the confirmation order. And where a creditor was allowed to reach back before the confirmation order, change the terms of the plan and order the debtor to pay more. This is the only reported case that I can find that so holds. Okay, now I want, I think we better stop, but you will get rebuttal. And Mr. Martin, will you respond to that, please? This is the only case. Well, I think, can you hear me all right? Perfectly. Okay, good. May it please the court, Curtis Martin for the creditor, Second Chance. The answer with regard to that question about this so-called reaching back is, is I think answered with a question of my own. At what point would Second Chance along this continuum of time that the debtor was objecting three different times there was an objection to the claim nine that was filed per the instructions of the bankruptcy court. At what point in time could Second Chance say, and I think you, Your Honor, alluded to this, when in a civil case attorney's fees might be awarded, but we don't know what those fees are right at the time at which they are awarded, or at least the opportunity for the issue of the attorney's fees to be presented. At this point in this litigation, Second Chance had no idea what its fees would be at any point in time at which the debtor just kept objecting or along the way filing motions for clarification. All of these things that were filed that Second Chance obviously had to respond to, because if it didn't, then the debtor would be saying, well, Second Chance didn't didn't respond to any of our objections. So obviously I had to object and all this time my client is incurring fee that I have to spend time on to deal with these issues that the debtor continues to raise that I might add the bankruptcy court each time overruled any of those objections. So it wasn't until November of 2020 that the bankruptcy court finally came to its final ruling to say the debtor's objection, final objection, is overruled. And at this point, the attorney's fees that Second Chance had submitted, both before the confirmation and after, because this is all, as I see it, a long continuum of the claim that Second Chance had with regard to the enforcement of its rights under its promissory note and security agreement, we finally come to November when we have these fees. What case would you suggest we look at precisely like this case? Well, I think it's the Witkowski case, because in that situation, the court recognizes that you're going to have an estimated claim that the debtor will indicate in its plan, but oftentimes there are other factors that will come into play that will cause the actual claim to be different than the estimated claim. And here we have a situation where the objections kept coming along and Second Chance had to respond to those. And obviously the attorney's fees are continuing. So we had an original affidavit filed in support of the original part of the claim, but then we had a supplemental. And I had told the bankruptcy court and counsel during, I think it was a July hearing we had, when the court was saying, how are you going to allocate, saying to me, how are you going to allocate these fees? Is it related to that Chrysler? Is it related to the edge? And my response was, well, you know, most, if not all is related, of course, to the edge, because that's the concentration of the litigation. And so at that point, I said to the bankruptcy court and to counsel that, look, we're devolving into a situation where fees are being incurred to recover fees. And the court acknowledged that and said, well, the debtor can obviously object if he wants to. And boy, he did. As we've discussed, the agreement entitles Second Chance to attorney's fees. Yes. Might some of the element of surprise, as Laney is alleging here, be avoided if Second Chance had just asked for attorney's fees in its original proof of claim? It did. And in fact, the original proof of claim, I think, included maybe only $200 for the preparation of the proof of claim. It was already there. There was a claim. Where the original attorney's fees began to rise in this case is because the debtor didn't comply with the bankruptcy court's two orders, not just one, but two orders to file an amended plan that paid for the full amount of the edge claim because it was a Section 910 claim the court found. The debtor didn't do that the first time in December of 2019, was told again in February of 2020, and didn't then either. In fact, filed a motion for clarification, bringing up a new Section 1301 co-debtor stay issue and saying he wasn't clear on what the court had ordered him to do when it was absolutely clear from the record what the debtor was to do. And apologies if you've already answered this. I am trying to follow you. And so then why didn't Second Chance move to modify the plan as opposed to file this motion for sanction? Frankly, Second Chance never had the opportunity, and here's why. We filed our original affidavit of attorney's fees. It was objected to. We had to respond to that. Then the bankruptcy court said, well, I'm not going to award it as sanction, but I am going to award it under the promissory note and security agreement, but I'm going to need to know what the allocation is, and then continued the hearing to July. So we have a confirmation in March. We're already to July, where the court is still contemplating the fees and how they're going to be assessed and awarded. And then I'm then filing a supplemental claim that's objected to three different times, three different objections. It finally gets us to the point where it's finally resolved to where this appeal then occurs in November of 2020. And that's why I answered Judge Robner's original question. At what point in this continuum of objections was Second Chance to say, oh, here's our claim? Because Second Chance was continually called upon to defend against objections or other motions incurring more fees. So it wasn't until November of 2020 when the bankruptcy court finally said, I'm going to approve this claim nine. It's at that point that Second Chance would have the opportunity to file its amended claim and move for a modification of the plan, if you will. But that ruling was appealed, and we've been in appeal ever since. So Second Chance has never had that opportunity until there's a final ruling with regard to whether or not these fees are appropriate. Then I can go back on Second Chance's behalf, I suggest, and seek to modify the plan. But I don't even think I even have to do that because the bankruptcy court awarded those fees on top of its original claim, which would then have to be incorporated into the plan under the Holstein principle. That there is compelling reason for the claim of Second Chance not to be stopped at the point of the confirmation. There's plenty of compelling reason. And I might add, those compelling reasons were not on Second Chance's behalf. Second Chance didn't do anything to cause any delay in this situation. It was either the bankruptcy court that wanted to consider it further, or it was the debtor who kept objecting, and Second Chance happened to respond and hearings set on each of those separate objections. Which finally took us to November when the bankruptcy court said, Claim 9 is approved. The debtor's objection to that is overruled. And then we had the appeal. That's a long answer to your question, but essentially it's Second Chance never had that opportunity. Did that answer your question? Yes. Okay. A little too much. So to get back to Judge Rovner, your question, I think what Kalski is the case and Holstein are the cases that we look at for a compelling reason for Second Chance to have the opportunity to present its claim after the confirmation. Because the confirmation is the perfunctory point at which, okay, if this is what the claims are, this is what the plan is. But that's not what the claims were. In this case, it was a continuum. We had continuing litigation going on in the bankruptcy court itself, at which point, final, several, what, eight months later, the bankruptcy court says these are the fees that are going to be approved as part of that claim. And then at that point, immediately, the appeal follows. And we've been at the appellate level ever since. And all of this started from the debtor's failure to comply with the bankruptcy court's order to simply provide for full payment of the edge debt. And to ask me this here, right now, how much are we talking about today? Well, the fees of record in the bankruptcy court, is that what you're asking? Yeah, that would be, well, the debtor has suggested it was $5,315. That's not correct. The two affidavits, one was $1,900 and some change. The other one was $1,700. But the total, to answer your question, was $3,672.42. $3,672.42. Thank you. Anything more? I don't think I have anything more to provide here. I think your honors are right on point in terms of your questions and the debtor's anticipation that fees would be sought and that more fees would be sought as the debtor continued to object. I think it's untenable for the debtor to suggest that he can continually object to what Second Chance is attempting to do as far as a claim and then also object to any fees that Second Chance might seek either under Section 105 or the Promissory Note and Security Agreement when it clearly has the right to ask for those fees. I actually have one more question for you, and that is, how will the additional attorney's fees affect the other creditors in this Chapter 13 plan? I don't really have an answer to that at this point, your honor, because we really haven't had a chance to visit that issue yet. I think a logical question would be, well, now what happens if this court approves of the claim of Second Chance? I think we're back to the bankruptcy court to ask for an amendment to the plan to provide for this claim. And in fact, it may be that I would come back on behalf of my client to ask for even more fees to defend these appeals. That's why I asked you what the exact amount was, because I could not figure it out. Well, in terms of the fees just itself, the record reflects both per the original affidavit of attorney's fees and then the supplemental affidavit of attorney's fees. And those were both reflected in Claim 9, which was then objected to two or three times by the debtor. That total, when you take that together, is that 3600 figure I just gave to you. Okay, thank you very much. Now, at the risk of being murdered by the other two judges, Mr. Dunham, I am giving you five. Because every time we hear a bankruptcy case, I don't know, for me, it's an education, I must say, because, you know, you all speak some different language and live in some other world. Okay. Well, thank you, Your Honor. The Witzkowski case does not help. In fact, I invite you to look at the case, Your Honor. What happened in that case is the debtor was not required to up his plan payments. What he did was just adjust the claim amount, given the fact that some of the creditors didn't file a claim. And so some of the creditors got to receive more, but the plan payments were exactly the same. The Holstein case, this court basically denied the effort of the creditor to force the debtor to pay more money. Because this court challenged the creditor to say, cite one case after a plan has been confirmed where a debtor has been required to up the plan payments. There wasn't one up to 1993, starting from 1898 to 1993, going from 1993 forward. There is no such case other than this one. This is the only reported case where a debtor, after a confirmed plan, is subject to being required to up the plan payments for a claim that preexisted the confirmation of the plan. There are numerous cases, and I cited them in my brief, where a creditor understated their claim, some of them for attorney's fees, some of them not. The creditor made a mistake, and the creditor wanted to go back and have the plan changed. And the court said, no, res judicata, section 1327A applies. But, you know, for your example there with the Chapel case, it was a completely different posture. There the debtor paid, the case was closed, and then the creditor went back and wanted more money. And so, of course, the court said no. But isn't this a completely different situation where Second Chance has asked for attorney's fees earlier with its initial claim, albeit a de minimis amount, and then it asked for attorney's fees in its motions for sanction, and it was waiting around for that to be ruled on? How is this case like Chapel at all? Well, because res judicata, and I cite cases in my brief, applies to any issue that was litigated or could have been litigated. Now, let's just take the example that we have in the civil case that Judge Rodner raised. Let's assume that we got a claim in federal court that's got a provision for attorney's fees. And the plaintiff wins and is entitled to attorney's fees. And the district judge has said, we're going to award attorney's fees in this case. And they're ongoing all the way up until the day that the judgment is entered. And what I've done in this case, this is what Mr. Martin should have done in this case. This was noticed up for confirmation on the 24th. He should have amended his proof of claim, claim nine, listed all the attorney's fees up until the confirmation hearing, indicating what his fees were up to that point in time, and even estimated, because that's what I do when I am entitled to attorney's fees, what the attorney's fees are going to be as of the day of hearing and get them approved. That's what he could have done. That's what he should have done. But he didn't do it. Look at the hearing transcript, March 30th, 2020. He made it very clear that he didn't want to do it that way. He wanted it to be awarded as a sanction. Look at that transcript. That's what he said. And so his client, in my opinion, waived their ability to get the additional fees under the claims process. We have to be able to rely on what these claims say in calculating what our plan payments are going to be. It's not our job to say, well, this claim is understated. That's the creditor's job. I have another question for you. I have to admit, I did not commit to memory the years of every single case and the years of any amendments to the statute. I do know Chappell and Holstein are 1993 cases. So why do you keep making this point that there were no cases from 18 so-and-so to 1993 and then 1993 Ford? Are you just referring to Chappell and Holstein or is there something else we're missing there? Why are you making this 1993 point? Because Judge Easterbrook in 1993 and Holstein indicated an oral argument. He asked the parties, has there ever been a case that you can find where a debtor has been required to up his payments after a confirmed plan? And the party said no. And then this court said in Holstein, we couldn't find such a case either where a debtor has been required to up their payments after confirmation. So what I did, it started in 1993 and went up to 2022. And I look for a case where a debtor was required to up his plan payments after a plan was confirmed. There is no such case. It's not special. And I appreciate your time. Thank you, Your Honor. All right. Well, thank you both very much. And we will take the case under advisement.